Our next case for argument this morning is Garcia v. SigmaTron International. Ms. Korn. Good morning, Your Honor. Yes, please proceed. Oh, thank you. Good morning, Your Honors. May it please the Court, Katherine Korn for the Plaintiff Appellant. Maria Gracia. At a time when these defendants knew that a jury and a district judge had rejected as false the explanation of their middle authority... Ms. Korn, before we get into the merits of this case, I have a question about subject matter jurisdiction. Certainly. During her deposition, the plaintiff conceded that she was not injured by the complaint of conduct. And that raises a question whether we have a case or controversy within the scope of Article III. I would like you to address that question. How can an uninjured plaintiff have standing to sue? Certainly. First of all, I would take issue with the characterization of the deposition excerpt as a concession because it's out of context and it's not complete. She did testify to emotional distress caused by these disclosures. She did concede that she has not yet suffered any monetary damages from her reputational damage. Isn't she well employed? She is well employed currently, yes. She's a very talented person. That's all I have. Keep going. Okay. The leading case, the Supreme Court case on this kind of retaliation, is Burlington Northern v. White. In which case, that plaintiff also had no monetary injuries. She had been suspended without pay for a period of a month, perhaps. But before she got to court, she had been reinstated and she had been given all of her back pay. So the issue of retaliation is one where we think that would support a case or controversy based on her reputation. It may not be clear to you that my question stems from the recent Supreme Court decision in Spokane, which said roughly that simply a violation of a statute is not enough for a case or controversy. There has to be a concrete injury. That's what I'm asking about. What is the concrete injury? Well, her emotional distress, her reputational damage. Look, let me put this in a different way. The statements in the filing with the SEC related Sigmatron's litigation position in ongoing litigation. They don't appear to be any different from what Sigmatron said to the judge, the district judge, the jury, this court on the appeal. It's for there to be damage, there would have to be some marginal injury from stating in one forum something that had been repeatedly stated in public before. That's what I'm looking for. Your Honor, I confess that I'm not familiar with Spokane and we would request that we may need to have supplemental. Yes, I would request that opportunity. Briefs on that question. The question I have, Ms. Corn, is let's just suppose for discussion purposes that you can clear a standing hurdle, okay? Yes. The point that Judge Mannion raised, isn't that, in other words, that there's been no adverse employment consequence to your client? Doesn't that become a problem for you, even if you can get beyond standing and you're into the elements of the retaliation claim under Title VII? Well, I don't believe so. I mean, that was the district court's ruling, but I don't believe so because of the facts in Burlington, as I explained, and because the determination whether there's an adverse employment action should be based on an objective standard. Well, do you agree that Title VII requires an adverse employment action? Yes. Okay. And so, if you agree with that, what is it here? It is the damage to her reputation. It is the knowingly making a false statement about her in a forum. Forum is not the right word. But in a setting where it's much more likely to be found by potential future employers and other people of consequence than a court record. Much more likely than a statement in the Federal Reporter Third Series because that's where this ended up. It's plastered all over the Federal Reporter, Lexis, Westlaw, all of the legal reporting services. It's there. All of those seem much more widely circulated than documents filed with the SEC. Well, it's there in a context where it is also discussed in terms of the outcome, which was that all of these declarative statements to the SEC were found to be false. And I would submit that if someone were looking for information about my client in the context of a background check for a new job, I don't know that they'd start with the Federal Reporter, Your Honor. I think that we can get to our expert whose opinion was stricken. But it was his opinion that the people in the talent acquisition, HR field, use specific tools to get at deeply into the Internet to find information about the relationship with any former employee, employer. So the challenge, I think, for you, Ms. Corn, is that your client has dealt you a tough hand on that argument factually. The argument makes sound sense that if there's something out there publicly that could damage your future job prospects, which is the argument you're making, that you're harmed. But your client testified, did she not? As Judge Mannion pointed out, that she's not only content in her current position, she can't identify any damage that she's experienced from the statements that were made. So you've got to bridge that. You've got to bridge the argument you're making with the facts that your clients dealt you here. And I would refer to the longer excerpt of her testimony in the record at 115-7, where she does talk about headaches and sleeplessness and emotional distress. And those are cognizable damages under Title VII. Yeah, if there was an adverse employment action. Right. And for that, we would rely both on Burlington, as I had discussed, and of course, this court's decision in Greengrass, where the facts are quite similar, where the former employer published in its SEC findings false statements about that plaintiff, and summary judgment for the employer was reversed in that case. That was found to be an adverse employment action because it could be seen as damaging her future job prospects. And it could be something that would... Greengrass, though, is a little bit different situation because Greengrass, after she left the one company, I mean, our opinion pretty clearly lays out the difficulty that she was having finding new employment. Right? But your client, I don't remember the name of it, what's the name of the company she's at? Imagineering or something? Imagineering. Yeah. She says she's happy there. Likes her job. Plans to stay. So she's not, you know, situated exactly like Celia Greengrass was. Well, Celia Greengrass was still looking for employment, yes. I don't remember the timeframe. She had an encounter with a recruiter who told her that this was damaging to her prospects. But we have offered, and again, we argue that it was an error, an abuse of discretion for the district court to strike the expert opinion of our talent acquisition expert, Don Wilson, who stated that most Americans change jobs every four years, I believe, or four in a fraction. While she has not yet, she certainly could. And in that circumstance, recruiters are likely to find this negative statement about her completely out of context of the fact that this was found to be, all this was found to be false. That she did not openly admit making an error, and she was fired as retaliation for her EEOC complaint. That is the established fact. Anything else is pretext and rejected, and it is not fully discussed in the SEC disclosures. I would like to turn to the court's 12B6 dismissal of the common law libel per se and false light invasion of privacy claims. The most recent Illinois Supreme Court opinion is Hadley v. Doe, and it states that if the likely intended meaning of a statement is defamatory, a court should not dismiss the plaintiff's claims under the innocent construction rule. In those circumstances, an innocent construction of the statement would necessarily be strained and unreasonable because the likely intended meaning is defamatory. And here we have the situation where we can infer the defamatory intent from the fact that the immediately preceding SEC disclosure by these defendants neutrally described the case, did not mention her by name, and was not objectionable. They knew how to do it right. They got it right the first time. And when they switched to this description of what is also in the document that the district court in Gracia 1 called a false paper trail and tracked that into their SEC disclosures, there's no reason why they would do that. There's no innocent intent. And including that kind of information in an SEC disclosure, it doesn't add anything. It has no value for the investment community. Was it published inaccurate? Definitely. Definitely. Because the conclusive fact is that she was fired because she had made an EEOC complaint. That's the whole thing in Gracia 1. No, counsel, that is her position. The employer stated its position. Did the employer, did Sigmatron state inaccurately what its litigating position was? It tracks fairly closely. I'm not sure it's entirely what the evidence was at the trial. No, I'm not asking about the evidence at the trial. I'm asking whether it is your contention that Sigmatron misstated its own litigating position. I would have to do a line-by-line comparison. But they never say. They say declarative statements that these things happened. And they don't say this was our position. It never says that in the SEC disclosures. That would have been an easy thing to do if they had wanted to do it. They didn't do it. I think at some point Judge Scudder got cut off. I just have a brief question. You can answer it if you want to move on. It's this. You're focused on the reasons that Sigmatron did this. And I understand why. And the reason why is because it surely stunned and hurt for the plaintiff to see this disclosure. I get that part of it. But is that motive and purpose and reason, however you want to characterize that, is that the way Illinois law works with respect to innocent construction? I didn't see it turning so much on purpose, motive, reason. Well, in the passage that I just quoted from Hadley v. Doe, it talks about the intended meaning, a likely intended meaning. I think that is right on point for intended motive and purpose. But by reading the words of what's disclosed, right? In other words, by focusing on what was said or what the alleged defamatory statement is, and then asking based upon its plain import, what's the intended effect of this? And can you give it an innocent construction? Right? We're not asking kind of a more subjective question than that. We're focusing on the words that were used. And I think that the words that were used need to be read in light of the likely intended meaning. The district court suggested two innocent constructions. The one it spent more time on in its decision was that this was a, that there is a sort of a general rule that a statement about a former employee taught something about the employee in that particular setting and is not defamatory, can be read innocently. There are several reasons why that's incorrect. And one of them is that the defendants themselves said that the only intended meaning or the only reasonable construction was as a description of litigation. And so secondly, as I've said before, they never say this is a description of the litigation. As a description of the litigation, it leaves out some very important points. For example, that the court awarded them, awarded the plaintiffs significant punitive damages. Punitive damages are never discussed here. Some of that balance might have taken some of the sting out of this, but basically it looks like they're trying to, to convince the reader that the court was wrong and that these are the facts that happened. I see that I'm running out of time. I'd like to reserve the rest for rebuttal. Certainly, counsel. Thank you. Mr. Fawaz. Thank you, Your Honor. May it please the court. Michael Fawaz on behalf of Sigmatron. Your Honors, we're asking that the judgment of the district court be affirmed for three reasons. First, the district court properly granted summary judgment on the Title VII claim for the reasons expressed by Your Honors today. Plaintiff has no evidence. Counsel. Yes, sir. I want you to pay attention to jurisdiction just as I asked Ms. Korn about it. Instead of leaping straight into the merits, we need to figure out whether this is a case properly in federal court at all. So I would like you to address the question whether the plaintiff has standing. Your Honor, if I recall the Spokeo case, I believe it basically took the Lujan standing requirements and explained a little bit more about the idea of concreteness and that you have to actually have an injury that exists. It can't be theoretical. If my memory is correct. And under that standard, I would agree, Your Honor, that the court probably lacks subject matter jurisdiction, but that did not come out until her deposition testimony. Well, that's all fine, but a court must satisfy itself about jurisdiction at every moment. This issue should have been discussed in the district court and apparently wasn't by either side. It was not discussed by the district judge. It was not mentioned in the appellate briefs, but we're discussing it now. Yes, Your Honor. And I agree with Your Honor's concern that in light of the Spokeo language about concreteness needing to require an actual injury, not just theoretical injury, that there is potentially a standing problem here, but I would not be comfortable. There's no potential. There is a standing problem. The question is whether there is a solution to the standing problem. And Your Honor, without further briefing and research on this, I would not be in a position to take this. This is something that counsel for both sides have an obligation to raise and consider on their own. It should never take lawyers by surprise when a court of appeals asks about subject matter jurisdiction. It just shouldn't happen. That's fair, Your Honor. All right, let's proceed. We obviously need supplemental briefs. Your Honor, as to the summary judgment issue, the district court granted summary judgment on the Title VII claim because plaintiff chose to proceed under the direct method. She has to show that she engaged in a statutorily protected activity, suffered an adverse employment action. You realize we've abolished the distinction between direct and indirect methods. References to the direct method are references to something that doesn't exist. Okay, Your Honor. But those are the elements of a Title VII retaliation. She must establish those four elements. The district court held that she had no evidence to support an adverse employment action and didn't reach the other factors. But I submit to you that she fails to present evidence of any of the factors, and the judgment can be affirmed on any ground. Plaintiff relied almost exclusively on Greengrass, and Judge Scudder distinguished that case because in Greengrass, she was told she was unemployed. She could not find employment. Google searches resulted in the SEC disclosure. And I think the most powerful underpinning of Greengrass was the fact that the employer took something private and confidential, unknown to the public, and then publicized it. As Your Honors have noted earlier, what happened here was literally taking what was already public and placing it in an SEC disclosure. And we cite this on page 11 of our brief. Plaintiff conceded under oath and through her summary disposition, I'm sorry, summary judgment record, that every particular statement that Sigmatron's SEC filing that served as the basis of this action was found in the public ring. That was conceded by Plaintiff in the lower court. And what's important here is, as Your Honors mentioned, Plaintiff presently has been with Imagineering for 10 years. She was with Imagineering for an employer for five years as of SEC filing and seven years as of her deposition. She has received regular and consistent raises. Her employer was deposed and said that they had never heard of the SEC filing until this lawsuit and that she will receive positive reviews and she is an exceptional employee. I think what's most striking is Plaintiff had never seen the SEC disclosure and does not know anyone that had ever seen it until her lawyers brought it to her. This is in stark contrast with the Greengrass case. And I think that supports what the district court did here. That's the injury or damages in addition to the standing issue. In Burlington, the Supreme Court noted that Title VII only protects alleged retaliation that produces an injury or harm. Where is that here? Your Honors, Plaintiff could not identify it to the point where Sigmatron had to file discovery motions that resulted in an order in the district court saying that Plaintiff, should this case go to trial, could present no evidence of injury or damages except the extent she set it forth in her deposition. Well, she set forth no injury or damages at her deposition. That alone is independent basis for dismissing that. Moreover, causation is a problem. The alleged adverse employment action was the SEC disclosure in April of 2015. Well, the lawsuit was filed nearly five years earlier. That temporal gap produced causation. So any of those factors, the failure to present evidence on any of them, would support affirming the district court's judgment on this. Your Honors, in the alternative, I would like to note that we moved to dismiss this action at the outset. In fact, I think all of the parties in the district court relied exclusively on the Green Grant. And our position was Plaintiff never fled an adverse employment event from the outset. And the reason for that is she literally fled nothing more than the SEC disclosure made public what was already public. And Green Grant relied on taking private information. The court observed that that could actually dissuade a future employee from making a claim. None of those factors present. Now, as it relates to the defamation and invasion of privacy, what I think is really rather striking is both before the district court and then before the court. Plaintiff claims that there is a statement within the SEC disclosure that is defamatory. And at no point does she give the court the entirety of the statement. She cherishes one sentence and asserts defamation. Well, that's contrary to Illinois law. You look at the entirety of a statement and its context when you are assessing for defamation. And Illinois' innocent construction rule is rather unique in that the court actually expressed that it is meant to favor defendants and any non-defamatory interpretation, quote, must be adopted if it is reasonable. Now, to ask the court, we recited the entirety of the statement on page 67. It is three lengthy paragraphs, and it is a chronological statement of what transpired between the parties from the EEOC charge through the jury's verdict and post-judgment. Mr. Fawaz, how do you respond a little bit more at a little higher level of generality to the plaintiff saying, this is really bizarre, you know, what happened here? You look at the SEC disclosures, okay, even after the adverse jury verdict for the company. And the disclosure says the company is a defendant in an employment-related lawsuit. The plaintiff won, got $300,000 of damages. Okay, kind of not much more than that, correct? I mean, that's basically it. It's a couple sentences. And then, you know, the district court denies a post-trial challenge to that. And then all of a sudden we have an invocation of Regulation SK and paragraph upon paragraph describing that prior litigation, including for the first time in a disclosure containing this particular statement about why, from the company's perspective, she was terminated. Don't you understand why she thinks that's troubling? Well, Your Honor, the timing was specifically because it became material to Sigmatron when the district court denied the post-judgment motions. The verdict was for $300,000, actually in excess of $300,000. So it was above the statutory caps. Wasn't the timing a problem when the jury returned the verdict? Well, no, Your Honor. And the reason for that was based on Seventh Circuit precedent. It requires a district judge to look closely at the degree of harm alleged. And there is a body of law in the Seventh Circuit, I mean, a large body of law, comparing the types of injury and remitted awards. And there were often, more often than not, remitted awards issued by district courts or by the Seventh Circuit when district courts failed to issue a remitted. So Sigmatron felt confident that on a post-judgment motion, it could, based on that body of law, demonstrate that plaintiff's alleged injury did not rise to the maximum level of the statutory cap. The district judge disagreed with Sigmatron. After that ruling, you now had, Your Honor, a judgment that was literally one-third of Sigmatron's profit for the April ending 2015. That, Sigmatron deemed to be material enough to disclose information to its shareholder. But I think what's significant, Your Honor, is if you look at that statement, it doesn't malign her. It doesn't say that she is incapable of working as a supervisor or in her field. It doesn't call her incompetent. It says that on one day as to one product line, she allowed this improper soldering to occur with lead-based product in a lead-free zone. But Sigmatron goes a step further, Your Honor, noting that it wasn't actually injured by this because it caught the improper product, segregated it, and did not ship it. And then the next paragraph is what struck me most. Sigmatron identifies the filing of the lawsuit and says that plaintiff has asserted a, quote, pattern of unwanted sexual advances. Now, I don't know a company on Earth that wants to tell its shareholders that it has been accused of a pattern of unwanted sexual advances. But it put that statement in there. That didn't help Sigmatron. It hurt Sigmatron. But that was the allegation in the lawsuit, and it disclosed it in the disclosure, in the same disclosure where it laid out why it terminated the plaintiff. And the last paragraph was literally nothing more than reporting on everything that happened at trial from summary judgment through post-judgment filing. And the district court correctly said, look, if you look at the whole statement, it suggests at best that she had one bad day and did not excel at her job on one occasion. And moreover, it appears to be nothing more than Sigmatron's position on the litigation. And when you have plaintiff then concede at summary judgment that every single statement came from the public record, again, Your Honor, this is summary judgment paragraphs 35 through 39. Your Honor asked whether everything came from the public record. It in fact did. And I think in this day and age, when you talk about things like Google, that's our best indication of whether something is out there. And the fact that if you Google plaintiff's name, the only thing that comes up is the prior lawsuit is very telling. You know, finally, Your Honor, I just want to briefly, I'm not going to get into it because plaintiff counsel did not have the opportunity to. But as to the Daubert rulings, it's an abuse of discretion standard as to whether you admit or exclude evidence on that kind of ruling. The district court did not err. And I think that the decision has to be made. Unless Your Honor has any questions, I will not. I'll wait for the remainder of my time. Thank you, Mr. Fawaz. Anything further, Ms. Corn? Yes, thank you, Your Honor. First of all, there's a reference in the defendant's brief about what they found when they Google searched the plaintiff's name. He referred to it again here. None of that's in the record. So it should not be considered. The argument about the temporal gap is, in my view, frivolous. When they published these SEC statements, the case was still pending. And the portion of Title VII relating to retaliation talked specifically about participation. She was still participating in the case that had been filed back in 2011. So there was no gap. And even if there had been with respect to Gratia I, the predicate EEOC charge for this case was filed in September of 2015. So it was brand new. Counsel misstated Illinois law on innocent construction. It's not if there's any innocent construction. It's if there's any reasonably innocent construction. And that's why the courts have talked about the intent of the speaker, a writer in this case, and also the context. The context of an SEC disclosure is one where the audience expects that everything is going to be word for word checked and accurate. If they had wanted to say this was their litigation position, they could have said that and they didn't. There's another order that we did not address at all. And that is our motion for partial summary judgment, which was denied because the defendant's motion was granted. We would request. Thank you. The case is taken under advisement.